UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**KENDALE GORDON**                                        **CIVIL ACTION**

**VERSUS**                                                **NO. 22-5297**

**CITY OF NEW ORLEANS, ET AL.**                           **SECTION: "P" (4)**

<u>**ORDER AND REASONS**</u>

Before the Court are seven motions to dismiss filed by Defendants Ananie Mitchell, Marlon Defillo, Nikia Adams, Juan Lopez, Melvin McCullum, Chris Robert, and Gordon Hewitt[1] (each a "Movant," and together, "Movants").[2] For the following reasons, the motions are **GRANTED**.

**I.     BACKGROUND**

Kendale Gordon filed this action on December 15, 2022 against the City of New Orleans, numerous current and former New Orleans Police Department ("NOPD") officers (the "Defendant Officers") and sergeants or lieutenants (the "Defendant Supervisors"), and "Unknown Insurance Companies."[3] Gordon's lawsuit arises out of his 2009 arrest and subsequent conviction for the murder of Patrice Comadore.[4] In 2021, Gordon alleges, DNA testing proved his innocence and his conviction was vacated.[5] Now, Gordon seeks damages from those whom he alleges are responsible for his false conviction.

On the night of August 8, 2009, two armed men broke into the home of sisters Darceleen and Patrice Comadore, who were there with a friend and four young children.[6] Darceleen later

---

[1] The complaint identifies this Defendant as Glen Hewitt (R. Doc. 1 at 1), but the Defendant's motion refers to him as Gordon Hewitt (R. Doc. 78) and the Court will refer to that Defendant as Gordon Hewitt.
[2] R. Docs. 21, 53, 63, 64, 65, 66, 78.
[3] R. Doc. 1.
[4] *Id.* at ¶¶ 1-2.
[5] *Id.* at ¶ 4.
[6] *Id.* at ¶ 1. These allegations are taken from Gordon's complaint. R. Doc. 1. At this stage, Gordon's well-pleaded, non-conclusory factual allegations are accepted as true. *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

told police that one of the men appeared to be older, the other younger.[7] During the robbery, one of the men shot Patrice, who tragically died.[8] Before the attackers escaped, Darceleen noticed that the younger attacker was bleeding profusely.[9] Later that night, witnesses saw two men carry Jessie Bibbins out of a car and leave him on the front steps of a home three miles from where the Comadores lived, where he was later found dead.[10] NOPD officers, including the individual defendants named in this action, were called to one or both crime scenes to investigate.[11]

When Darceleen was first interrogated by police, she told them that the bandana covering the face of the younger attacker slipped down for a moment and that he looked like someone she had seen in the neighborhood—Gordon—whom she mistakenly believed was named "Kendrick or Kendall."[12] At this point in the investigation, Gordon alleges, NOPD already knew that Jessie Bibbins—only 19 years old at the time—was the younger attacker and that 18-year old Kendale Gordon could not have been his accomplice as Darceleen had identified two attackers, one younger and one older.[13]

Defendant Officers and Supervising Defendants, Gordon alleges, then set out upon a malicious scheme to pin Patrice Comadore's murder on him despite overwhelming evidence indicating he was not involved in the robbery or murder. Defendants Mathews and Morton put together an unduly suggestive photo array and provided other false information to coerce Darceleen into identifying Gordon as the younger attacker.[14] Morton then included in his report that Darceleen identified Gordon with "100 percent certainty," despite Darceleen's later statements

---

[7] R. Doc. 1 at ¶ 58.
[8] *Id.* at ¶ 18, 37.
[9] *Id.* at ¶ 19.
[10] *Id.* at ¶¶ 24-26.
[11] *Id.* at ¶¶ 37, 51.
[12] *Id.* at ¶ 58.
[13] *Id.* at ¶ 30, 62.
[14] *Id.* at ¶ 68.

that "the description she gave Morton during the interrogation was of a person she'd seen in her neighborhood, not the person who attacked her."[15] Defendant Officers and Defendant Supervisors knew that no physical evidence connected Gordon to the crime, that multiple witnesses said that Gordon and Bibbins did not know each other, and that relatives of Bibbins were more likely suspects.[16] Gordon alleges that Defendant Officers and Defendant Supervisors refused to investigate these other leads.

In 2021, Gordon's 2010 conviction was overturned after DNA testing showed Gordon's DNA missing from key pieces of physical evidence.[17] Now, Gordon brings ten federal constitutional and Louisiana state law claims against Defendant Officers and Supervising Defendants for their failure to disclose exculpatory evidence or intervene in the alleged misconduct described above and against the City of New Orleans and "Unknown Insurance Companies" for related harms. Relevant to the instant seven motions, Defendant Officers (including Mitchell, Adams, Lopez, Hewitt, and McCollum) and Supervising Defendants (including Robert and Defillo) face 42 U.S.C. § 1983 claims for violation of due process (Count I), deprivation of liberty and illegal detention (Count II), failure to intervene (Count III), and conspiracy (Count IV), and Louisiana state law claims for malicious prosecution (Count V), intentional infliction of emotional distress (Count VI), and civil conspiracy (Count VII).

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim considers the legal sufficiency of the complaint.[18] To survive a 12(b)(6) motion to dismiss, the pleading must contain a "short and plain

---

[15] *Id.* at ¶ 69-70.
[16] *Id.* at ¶¶ 82-85.
[17] *Id.* at ¶¶ 101-04.
[18] FED. R. CIV. P. 12(b)(6).

3

statement . . . showing that the pleader is entitled to relief."[19] While the pleading need not assert detailed factual allegations, it must "state a claim to relief that is plausible on its face."[20] A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21]

In considering a motion to dismiss, the court must "accept as true the well-pleaded factual allegations in the complaint."[22] Although legal conclusions may be asserted, "they must be supported by factual allegations" to gain the assumption of truth.[23] A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely.[24] Even so, the court may dismiss a complaint "if it clearly lacks merit—for example, where there is an absence of law to support a claim of the sort made."[25]

Section 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal*; an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard.[26] "'[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.'"[27]

---

[19] FED. R. CIV. P. 8(a)(2).
[20] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[21] *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009).
[22] *Cuvillier*, 503 F.3d at 401 (internal citations and quotations omitted).
[23] *Iqbal*, 556 U.S. at 678.
[24] *Twombly*, 550 U.S. at 556.
[25] *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020) (internal citations and quotations omitted).
[26] *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020) (citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)).
[27] *Id.* at 267 (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)).

### III.   LAW AND ANALYSIS

While Ananie Mitchell, Marlon Defillo, Nikia Adams, Juan Lopez, Melvin McCullum, Chris Robert, and Gordon Hewitt each filed a separate motion to dismiss, their motions are nearly identical and submit the same arguments.[28] For the sake of efficiency, therefore, this Court will address the motions as one while noting any inconsistencies between the motions where appropriate.

#### A.  Grouping defendants

As an initial matter, Movants argue that the Complaint commits a fatal flaw by referring to two subsets of the defendants by the umbrella terms "Officer Defendants" and "Supervisor Defendants."[29] Movants argue this style of pleading is prohibited by the Federal Rules of Civil Procedure, which require "'each defendant to know what he or she did that is asserted to be wrongful.'"[30] Gordon, meanwhile, insists this approach is merely for efficiency and that by defining each phrase, he has effectively named each defendant within that group with every mention.

The Fifth Circuit has cautioned against considering the alleged actions of defendants collectively.[31] But, as Gordon correctly notes, the cases that Movants cite in favor of this argument involved complaints that lumped together individuals and entities of various roles under the umbrella term "defendants."[32] In contrast, Gordon categorized the named defendants according to their roles, albeit only as either "Defendant Officers" or "Supervising Officers."[33] The Complaint's allegations are differentiated according to the investigatory roles of NOPD officers

---

[28] R. Docs. 21, 53, 63, 64, 65, 66, 78.
[29] R. Doc. 21-1 at 6 (quoting *Hawkins v. Sanders*, No. 19-13323, 2023 WL 2565403, at *3 (E.D. La. Mar. 17, 2023)).
[30] *See, e.g.*, R. Doc. 21-1 at 5 (citing *Cain v. City of New Orleans*, No. 15-4417, 2016 WL 2849478, at *5 (E.D. La. May 31, 2016)).
[31] *See Meadours v. Ermel*, 486 F.3d 417, 421-22 (5th Cir. 2007).
[32] *See, e.g.*, *Cain*, 2016 WL 2849478, at *4-5.
[33] R. Doc. 1 at ¶¶ 9-10.

(the "Defendant Officers") versus NOPD sergeants and lieutenants (the "Supervising Officers"). After identifying the individual defendants that fall into those two categories, the subsequent use of those umbrella terms is sufficient to put defendants on notice as to their alleged involvement in Gordon's claimed constitutional injuries.

### B. Inadequate specificity

Movants' primary argument is that Gordon has not plead sufficiently specific allegations to survive a motion to dismiss. Movants argue that Gordon "fails to plead what [any individual Movant] did or failed to do that rises to a constitutional deprivation," aside from allegations that Movants characterize as conclusory.[34] Movants assert that Gordon's allegations are "both conclusory and implausible," in that the eighteen "Defendant Officers" could not have been involved in each and every step of the investigation.[35] Similarly, Movants argue that it is "implausible" that "seven supervising officers were so involved in the underlying investigation that they knowingly approved constitutional violations" or that "the lead investigator on the case obtained approval from seven supervisors" before making decisions in the underlying investigation.[36] Nor does Gordon allege, Movants argue, any particular acts that any Movant took to violate Gordon's rights or conspire to do the same.[37] This Court agrees.

Gordon alleges the Defendant Officers (including Mitchell, Adams, Lopez, McCullum, and Hewitt) gathered information at the two crime scenes and shared that information (including that Gordon and Bibbins, the deceased suspect, did not know each other) with each other and their supervisors;[38] did not disclose to prosecutors or defense counsel the contents of their interview

---

[34] *See, e.g.*, R. Doc. 21-1 at 6.
[35] *See, e.g.*, *id.*
[36] *See, e.g.*, *id.*
[37] *See, e.g.*, *id.* at 7.
[38] R. Doc. 79 at 6 (citing R. Doc. 1 at ¶¶ 1, 37, 41, 51, 82).

6

with the primary eyewitness (including false information fed to the eyewitness);[39] agreed to include fabricated information in the lead detective's report;[40] knew there was no probable cause to suspect Gordon of committing the crime;[41] ignored alternative suspects;[42] and withheld other exculpatory evidence.[43] Grant alleges the Supervising Officers (including Defillo and Robert) knew the information that their subordinate officers developed at the crime scenes,[44] ignored alternative suspects,[45] and oversaw the Defendant Officers as they withheld other exculpatory evidence.[46]

Though Gordon provides significant detail of the alleged scheme to pin Patrice Comadore's murder on him, Gordon only alleges a single concrete fact regarding the Movants—that they were present at one or both crime scenes on the night of the underlying crime.[47] The remaining allegations naming Defendant Officers and Supervising Officers require the unsupported inference that Movants remained involved in the murder investigation after initially canvassing the crime scenes. Without alleging that Movants had any actual involvement in the investigation after visiting the two crime scenes, Gordon's complaint cannot support the bare assertions that Movants were aware of other officers' misconduct and nevertheless refused to intervene to prevent Gordon's unconstitutional and malicious prosecution.

Comparing Gordon's allegations against Movants to those against other defendants paints a stark contrast. For example, Gordon alleges:

---

[39] R. Doc. 1 at ¶¶ 60, 68, 71.
[40] *Id.* at ¶ 71.
[41] *Id.* at ¶¶ 75, 82.
[42] *Id.* at ¶¶ 82-85.
[43] *Id.* at ¶¶ 92-97.
[44] *Id.* at ¶¶ 42, 51.
[45] *Id.* at ¶¶ 83-85.
[46] *Id.* at ¶¶ 92-97.
[47] *Id.* at ¶¶ 37, 51.

After showing Darceleen the photo arrays and using coercive tactics to manipulate Darceleen into falsely identifying Gordon as her sister's killer, Morton turned on a tape recorder and recorded a conversation with Darceleen in which she repeated the false identification and other information Morton, Mathews, Johnson, and other Defendant Officers had fed to her during and before her initial, unrecorded interrogation.[48]

The foregoing paragraph follows allegations that Morton and Mathews compiled the two suggestive photo arrays "based on false information supplied by Defendant Johnson" and that Mathews and Morton agreed to draw tattoos on photos appearing in the array next to Gordon's photo.[49]  Noticeably absent from the preceding paragraphs is any mention of another defendant's involvement.  This dichotomy—specific factual allegations made against a handful of defendants compared to vague assertions that others were also involved—undermines Gordon's argument that information "peculiarly within defendants' knowledge" hamstrings his pleading as to the Movants.[50]

Similarly conclusory allegations appear elsewhere in Gordon's complaint and, even under the generous Rule 8 pleading standard,[51] are insufficient to sustain a claim against Movants. Gordon alleges that Defendant Morton "included other fabricated information in his report" "[w]ith the agreement of other Defendant Officers."[52]  Gordon provides no detail or context to plausibly tie the numerous other Defendant Officers to such an agreement.[53]  Likewise, Gordon alleges that "[t]he Defendant Officers also failed to disclose to Plaintiff, his attorneys, and state

---

[48] *Id.* at ¶ 68.
[49] *Id.* at ¶ 65
[50] R. Doc. 79 at 11.
[51] FED. R. CIV. P. 8(a).
[52] R. Doc. 1 at ¶ 71.
[53] *See Ashcroft*, 556 U.S. at 678.

prosecutors evidence of three phone messages left for Morton before Gordon's trial by key witnesses to the investigation . . ..."[54] The three messages described therein and Morton's failure to report them to the prosecutors or defense counsel could sustain a claim over a Rule 12(b)(6) challenge.  But Gordon does not allege how any other Defendant Officer could have known about those messages, rendering it an unwarranted factual inference.[55]

Gordon's complaint is also replete with allegations that Movants knew of evidence that implicated alternative suspects and, therefore, that they are liable for failing to prevent other officers from pursuing charges against Gordon.[56]  For example, Gordon alleges that "[t]he Defendant Officers also knew that no evidence connected Gordon to the crime.  This was particularly true as, following his arrest, several witnesses told the Defendant Officers—including Defendant Morton—that Kendale Gordon and Jessie Bibbins didn't know each other, making it unlikely that the two would be partners in crime."[57]  But Gordon provides no allegations to substantiate his assertion that Movants continued to be involved in the investigation after initially visiting the two crime scenes, thus making it implausible that any Movants could or should have realized that the evidence from both crime scenes indicated Gordon was not involved in the crime.[58]  For the foregoing reasons, the motions to dismiss filed by Defendants Ananie Mitchell, Marlon Defillo, Nikia Adams, Juan Lopez, Melvin McCullum, Chris Robert, and Gordon Hewitt are granted.  To the extent Gordon can amend his complaint to cure the defects discussed herein, Gordon shall have 21 days from the date of this Order to do so.

### C. Qualified immunity

---

[54] R. Doc. 1 at ¶ 96.
[55] *See Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) ("'We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'") (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2009)).
[56] R. Doc. 1 at ¶¶ 83-84.
[57] *Id.* at ¶ 82.
[58] *Gentilello*, 627 F.3d at 544.

Movants also assert that they are entitled to qualified immunity as to Gordon's claims that arise under federal law because Gordon failed to plead any facts about any of them individually or allege that any of them violated a federal constitutional or statutory right.[59]  For the reasons set forth above, Movants' motions are granted and it is therefore unnecessary to consider Defendants' qualified immunity arguments at this juncture.[60]

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant Ananie Mitchell's Motion to Dismiss for Failure to State a Claim (R. Doc. 21) is **GRANTED**, as set forth herein.

**IT IS FURTHER ORDERED** that Defendant Marlon Defillo's Motion to Dismiss for Failure to State a Claim (R. Doc. 53) is **GRANTED**, as set forth herein.

**IT IS FURTHER ORDERED** that Defendant Nikia Adams's Motion to Dismiss for Failure to State a Claim (R. Doc. 63) is **GRANTED**, as set forth herein.

**IT IS FURTHER ORDERED** that Defendant Juan Lopez's Motion to Dismiss for Failure to State a Claim (R. Doc. 64) is **GRANTED**, as set forth herein.

**IT IS FURTHER ORDERED** that Defendant Melvin McCollum's Motion to Dismiss for Failure to State a Claim (R. Doc. 65) is **GRANTED**, as set forth herein.

**IT IS FURTHER ORDERED** that Defendant Chris Robert's Motion to Dismiss for Failure to State a Claim (R. Doc. 66) is **GRANTED**, as set forth herein.

**IT IS FURTHER ORDERED** that Defendant Gordon Hewitt's Motion to Dismiss for Failure to State a Claim (R. Doc. 78) is **GRANTED**, as set forth herein.

---

[59] R. Doc. 21-1 at 8; R. Doc. 85 at 3.
[60] *See Wooten v. Roach*, 964 F.3d 395, 406 (5th Cir. 2020) (finding that a district court's order delaying decision on qualified immunity defense until after a possible amended complaint did not constitute an appealable collateral order).

**IT IS FURTHER ORDERED** that Gordon's claims against Ananie Mitchell, Marlon Defillo, Nikia Adams, Juan Lopez, Melvin McCollum, Chris Robert, and Gordon Hewitt are **DISMISSED WITHOUT PREJUDICE**.  To the extent Gordon can cure the defects discussed herein, Gordon shall have 21 days from the date of this Order to file an amended complaint.

New Orleans, Louisiana, this 30th day of September 2024.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**